# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| GUILLERMO RODRIGUEZ, ) | | |
|    ID # 1679572, ) | | |
|       Plaintiff, ) | | |
| vs. ) | No. 3:11-CV-1721-G-BH | |
| ) | | |
| CHRIS BENTLEY, et al., ) | | |
|       Defendants. ) | Referred for Pretrial Management | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS

Pursuant to *Special Order 3-251*, this action has been automatically referred for pretrial management. Before the Court is *Defendants' Motion for Summary Judgment* ("MSJ"), filed August 3, 2012 (doc. 37). Based on the relevant filings and applicable law, the motion should be **GRANTED**.

## I. BACKGROUND

Guillermo Rodriguez (Plaintiff) sued Italy Police Officers Chris Bentley (Bentley) and Mike Adams (Adams) under 42 U.S.C. § 1983 for alleged excessive force during his arrest on July 8, 2009. (Compl. at 3, 6-9; Answers to Magistrate Judge's Questionnaire (MJQ) 1-3.)[1]

It is undisputed that, on July 8, 2009, the defendants responded to a complaint from one of Plaintiff's neighbors. *Rodriguez v. State*, 2011 WL 345934, at *1 (Tex. App.-Corpus Christi Feb. 3, 2011). At the scene, the defendants arrested Plaintiff for attacking a neighbor with a beer bottle. *Id.*

According to Plaintiff, after the defendants knocked and he answered the door, they pushed their way into his apartment, causing him to fall into his stove. (Compl. at 6; MJQ Ans. 1-2.).

---

[1]Answers to the MJQ constitute an amendment to the complaint. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

Bentley handcuffed Plaintiff by bending his arm in a painful manner and shoved him into a chair while Adams "ransacked" his apartment. *Id.* After questioning Plaintiff about the assault against the neighbor, Bentley twisted Plaintiff's arm, hit him with his elbow on the back of his head, and restrained his neck. Bentley and Adams then push him towards the patrol car "in a run." (MJQ Ans. 1-2) To avoid hitting his head on the car, Plaintiff reacted instinctively by putting his leg up against the car door. This caused the defendants to lift him into the air and slam him down on concrete, fracturing his wrist. (Compl. at 7; MJQ Ans. 1-2). Plaintiff avers that, after he was on the ground with his hands handcuffed, the defendants stood up, and Bentley shouted to him to stop resisting. Plaintiff responded that he was not resisting. Bentley then kicked him in the back, and Adams placed his foot on Plaintiff's head and face, beat him about the face and head with his fist, and kicked him in the chest. Adams, encouraged by Bentley, then sprayed Plaintiff in the face, eyes, and mouth with pepper spray–all while he was lying on the ground handcuffed and offering no resistance. *(*MJQ Ans.1-2.) He further avers that this attack caused bruising and scars on his chest and heart, facial swelling, and a rear head contusion. The pepper spray sprayed into his face resulted in loss of vision, shortness of breath, and cardiac arrest. He was then transported to a hospital for treatment. (Compl. at 7-8, MJQ Ans. 3-4).

According to the defendants' sworn affidavits, they responded to the call regarding Plaintiff's assault of a neighbor and saw the broken beer bottles outside. They knocked on Plaintiff's apartment door, and Plaintiff answered the door with a strong alcohol odor coming from him, an unsteady gait, and using slurred words. Plaintiff answered a few questions from the defendants and admitted throwing beer bottles at the female neighbor. When Adams asked him to exit his apartment and approach the police vehicle, Plaintiff shoved the door into Adams. The defendants then entered

2

Plaintiff's apartment to arrest him for assaulting his neighbor, but he refused to be handcuffed and began struggling and fighting with the defendants. The defendants aver that after Plaintiff was warned twice that pepper spray would be used if he did not stop resisting arrest, Bentley sprayed him with pepper spray. After that, the defendants were able to handcuff Plaintiff and remove him from the apartment. Plaintiff stated that he was not going to jail and kicked the rear door of the police car, which caused Plaintiff, the defendants, and a third officer from a neighboring city to fall to the ground. Bentley's elbow was injured in the fall. The defendants and the third officer then struggled to get Plaintiff off the ground and attempted to place him in the police car. He continued to struggle, kicked the door again and, once in the rear seat, began beating his head on the window and door of the police car. The defendants deny that they kicked, punched, beat, or struck Plaintiff. (MSJ App'x, Bentley and Adams Affidavits).

Plaintiff was convicted of aggravated assault with a deadly weapon on the neighbor. *Rodriguez*, 2011 WL 1158946 at *1. He was also convicted of assault of a public servant, Bentley. Bentley testified at trial that when Plaintiff kicked the patrol car, it caused him and the officers to fall to the ground, with Bentley's elbow landing on the ground underneath Plaintiff's back. *Id*.

The defendants moved for summary judgment on August 3, 2012, alleging that Plaintiff's claims are barred by the relevant statute of limitations and *Heck v. Humphrey*, 512 U.S. 477 (1994), and that they are entitled to qualified immunity. (docs. 37-39). Plaintiff did not file a response to the motion for summary judgment.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a

matter of law. Fed. R. Civ. P. 56(c)(2). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

Typically, a movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In the context of § 1983 litigation, however, governmental employees asserting the defense of qualified immunity in a motion for summary judgment need only assert the defense in good faith. *See Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008); *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007). They have no burden to put forth evidence. *Beck v. Tex. State Bd. of Dental Examiners*, 204 F.3d 629, 633-34 (5th Cir. 2000).

The burden then shifts to the non-movant to show that the defense does not apply. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). The non-movant must identify specific evidence in the record and show how it presents a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324; *see also RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).[2] Although courts view the evidence in a light most favorable to the non-movant, *Anderson*, 477 U.S. at 255, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence'", *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting

---

[2] Courts generally liberally construe a *pro se* plaintiff's pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam). They have no obligation under Fed. R. Civ. P. 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment", however. *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

4

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc)). The non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

### III. STATUTE OF LIMITATIONS

Federal courts look to the law of the forum state to determine the length of the statute of limitations applicable in cases filed pursuant to 42 U.S.C. § 1983. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). The general statute of limitations governing personal injuries in the forum state provides the applicable limitations period. *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001). Texas has a two-year statute of limitations for personal injury claims, so Plaintiff had two years from the date his claims accrued to file suit. *Id.*; *accord Hatchet v. Nettles*, 201 F.3d 651, 653 (5th Cir. 2000).

While state law determines the length of the limitations period, federal law determines the accrual date. *Wallace*, 549 U.S. at 388; *Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008). Generally, a claim accrues when the plaintiff has "a complete and present cause of action," or "when the plaintiff can file suit and obtain relief." *Wallace*, 549 U.S. at 388 (citation and internal quotation marks omitted).

> "Under federal law, the [limitations] period begins to run 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'" A plaintiff's awareness encompasses two elements: "(1) The existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions." A plaintiff need not know that she has a legal cause of action; she need know only the facts that would ultimately support a claim. Actual knowledge is not required "if the circumstances would lead a reasonable person to investigate further."

*Piotrowski*, 237 F.3d at 576 (citations omitted); *Walker*, 550 F.3d at 414.

Here, Plaintiff was arrested and allegedly beaten on July 8, 2009. Because he knew the

5

factual basis for his claims on that date, his claims accrued on that date. Therefore, Plaintiff had until July 8, 2011, to file suit. The defendants acknowledge that Plaintiff's complaint is dated "July 8, 2011," but argue that there is no evidence showing that the date is correct. They further assert that because the postmark on the envelope containing the complaint is July 14, 2011 (doc. 2 at 10), and the complaint was received by this Court on July 19, 2011 (*Id.*), the record does not contain "any evidence" that Plaintiff timely filed his complaint under the mailbox rule. (MSJ Brief at 20). Under the prison mailbox rule, an action under 42 U.S.C. § 1983 is deemed filed when the prisoner delivers the pleadings to prison authorities for mailing to the court. *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir.1995).

To prevail on their affirmative defense that Plaintiff's complaint is barred by limitations, the defendants must establish as a matter of law that Plaintiff's claims against them were asserted after the two-year limitations period ran on July 8, 2011. *See Ramirez v. City of Dallas*, 2002 WL 32508210, *2 (N.D. Tex. Oct. 7, 2002) (limitations is an affirmative defense on which the defendants will have the burden of proof at trial), *citing Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986). The defendants have not provided any evidence, such as a prison mail log, to meet their burden to show that Plaintiff did not deliver his complaint to the prison authorities on July 8, 2011, the date of execution. The complaint shows that Plaintiff was incarcerated in Beeville, Texas, and the envelope bears a postmark date of July 14, 2011, from San Antonio, Texas. (Compl. at 1). A delay between the date a prisoner tenders filings to prison authorities and the date that the prison authorities actually mail the filing is not uncommon. In fact, a prisoner's lack of control over the mailing or filing of his papers is the rationale for the prison mail box rule. *See Houston v. Lack*, 487 U.S. 266, 271 (1988). Given the defendant's failure to proffer contrary evidence, and drawing

all inferences from the evidence in the record in favor of the non-movant Plaintiff, as the Court must, it cannot find that the defendants have met their burden to establish as a matter of law that Plaintiff's claims were filed after the limitations period expired. The defendant's motion for summary judgment on this basis should be denied.

## IV. HECK V. HUMPHREY

In *Heck v. Humphrey*, the Supreme Court held that when a successful civil rights action would necessarily imply the invalidity of a plaintiff's conviction or sentence, the claim must be dismissed unless the plaintiff demonstrates that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254. *Id*. at 486-87. A plaintiff does so by achieving "favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence." *Muhammad v. Close*, 540 U.S. 749, 751 (2004) (per curiam). Courts have extended *Heck* to claims seeking declaratory or injunctive relief as well as damages under § 1983. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *Clarke v. Stalder*, 154 F.3d 186, 190-91 (5th Cir. 1998).[3] "[T]he *Heck* determination depends on the nature of the offense and of the claim." *Arnold v. Slaughter*, 100 Fed. App'x. 321, 323 (5th Cir. June 14, 2004).

**A.    Before and During Fall**

In this case, it is undisputed that Plaintiff was convicted of assaulting Bentley, a public servant. Bentley testified at trial that when Plaintiff kicked the door of the police car, it pulled them

---

[3] The defendants also assert in their motion that Plaintiff's claim of illegal arrest is likewise barred by *Heck*. To the extent that such a claim can be construed from Plaintiff's pleadings, it would be *Heck*-barred because Plaintiff was arrested for, and convicted of, aggravated assault of his neighbor. A claim of false arrest would necessarily imply the invalidity of his aggravated assault conviction. *See Hudson v. Hughes*, 98 F.3d 868, 872-73 (5th Cir.1996).

7

to the ground, causing physical pain and injury to Bentley. *Rodriguez*, 2011 WL 345934 at *4.

Under Texas state law, a person is guilty of assault on a public servant, a third degree felony, if he: 1) intentionally, knowingly, or recklessly caused bodily injury to a person; 2) the person injured was a public servant; 3) the defendant knew his victim was a public servant; and 4) the victim was lawfully discharging his official duties at the time of the assault or was assaulted in retaliation for exercising his official power. *See* TEX. PENAL CODE ANN. § 22.01(a), (b)(1) (West 2009). Because Plaintiff was convicted of this offense, it was conclusively established that he caused bodily injury to Bentley by kicking the police door and causing him to fall to the ground, that Bentley was a public servant at the time, and that at the time of the fall Bentley was either lawfully discharging his official duties, or that Plaintiff caused him to fall in retaliation for exercising his official duties.

The Texas Court of Criminal Appeals has held that a correctional officer who violates the civil rights of a prisoner within his charge is not acting in the "lawful discharge" of those duties, because the term "lawful discharge" means that the public servant is not "criminally or tortiously abusing his office as a public servant." *Hall v. State*, 158 S.W.3d 470, 474 (Tex. Crim. App. 2005); *see also Johnson v. State*, 172 S.W.3d 6, 11 (Tex. App.–Austin 2005, pet. ref'd) (holding that the evidence was sufficient to support a conviction for assault on a public servant because a jury could have rationally concluded that the police officer was lawfully exercising her police duties by physically restraining the defendant when she was kicked by the defendant). Plaintiff's claims that the defendants used excessive force during the fall, resulting in the injury to his arm and wrist, is barred by *Heck*. If Plaintiff were to prevail in his claim that the officers violated his constitutional rights by using excessive force against him when the fall occurred, it would necessarily imply the

invalidity of his conviction for assaulting a public servant in the lawful discharge of his duties by kicking the car door and causing the fall.

Likewise, to the extent that Plaintiff is alleging that any of his injuries were caused by Bentley's actions in his initial arrest of Plaintiff in his apartment, including Bentley twisting his arm, hitting him with his elbow on the back of his head, and restraining his neck, these claims are also barred by *Heck* because they would necessarily imply the invalidity of Plaintiff's conviction for assault on a public servant who was acting in the lawful discharge of his duties of arresting him. *See Rodriguez*, 2011 WL 345934 at *3 (noting that the jury charge instructed the jury to convict Plaintiff if they found beyond a reasonable doubt that Plaintiff caused bodily injury to Bentley, that Plaintiff knew he was a public servant, and that Bentley was lawfully discharging his official duty of arresting appellant). Therefore, Plaintiff's excessive force claims for the defendants' conduct before and during the assault of Bentley are *Heck*-barred.

**B.** **After Fall**

The defendants also contend that because Plaintiff claims that he did nothing wrong during his arrest, any claims that they used excessive force after the fall are also *Heck*-barred as contrary to his conviction. (MSJ Brief at 12).

Defendants cite *Arnold v. Slaughter,* which involved a plaintiff who had been convicted of resisting arrest and alleged that the arresting officers had used excessive force. The Fifth Circuit held that the plaintiff's § 1983 claims were barred by *Heck* because:

> Arnold's claims are not that the police used excessive force after he stopped resisting arrest or even that the officers used excessive and unreasonable force to stop his resistance. Instead, *Arnold claims that he did nothing wrong, but was viciously attacked for no reason. He provides no alternative pleading or theory of recovery.*
>
> In this way, Arnold's claims are distinguishable from excessive force claims

9

> that survive *Heck*'s bar . . . . If Arnold prevails, he will have established that his criminal conviction lacks any basis.

*Arnold*, 100 Fed. App'x. at 324-25 (*emphasis added*). The defendants also rely on *Walker v. Munsell*, 281 Fed. App'x 388 (5th Cir. June 13, 2008). Citing *Arnold*, the Fifth Circuit in *Walker* rejected the plaintiff's claim that a favorable judgment would not necessarily invalidate his conviction for resisting arrest. It found that Walker's excessive force claims were barred by *Heck* because Walker did not claim that "the officers used excessive force after he stopped resisting or to stop his resistance; his claim is based solely on his assertions that he did not resist arrest, did nothing wrong, and was attacked by the Appellee officers for no reason." *Id*. at 390; *see also DeLeon v. City of Corpus Christi*, 488 F.3d 649, 656-57 (5th Cir. 2007) (holding that *Heck* barred an excessive force claim where the plaintiff claimed that he did not resist arrest); *Walker v. Horseshoe Entertainment*, 483 Fed. App'x 884, 887 (5th Cir. June 6, 2012) (holding that an excessive force claim based on a single interaction with the police where the plaintiff avers that he did not resist arrest at all was barred by *Heck* when there has been a conviction for resisting arrest because the claim can only be considered as an attack on the validity of the conviction).

Here, Plaintiff likewise claims that he was not at fault for the events surrounding his arrest, and that he did not resist arrest or intentionally hurt Bentley. He concedes that he kicked the police car, however, and he does not dispute that Bentley was injured by the fall. He also avers that after he and the defendants fell to the ground, he lay on the ground with his hands behind his back while the defendants got up. Bentley yelled at him to stop resisting, and Plaintiff told the defendants that he was not resisting. The defendants then kicked him, punched him, and sprayed him with pepper spray while he was handcuffed and defenseless on the ground. (MJQ Ans. 1).

In *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008), the Fifth Circuit held that a claim of

excessive force occurring after the plaintiff had ceased resistance would not necessarily imply the invalidity of her conviction for earlier resisting arrest. The relevant question was whether success on an excessive force claim required either negation of an element of the criminal offense or proof of a fact that was inherently inconsistent with the conviction. The Fifth Circuit emphasized that an excessive force claim would not necessarily imply the invalidity of a conviction a case in which the factual basis for the conviction is "temporally and conceptually distinct" from the excessive force claim. *Id*. at 498, *citing Ballard v. Burton*, 444 F.3d 391, 398 (5th Cir.2006) (holding that an excessive force claim was not barred by *Heck* because Ballard's conviction for assault by menace of a different officer than the defendant, which Ballard admitted, was conceptually distinct from a claim of excessive force that occurred during a different time period); s*ee also Pratt v. Giroir*, No. 07-1529, 2008 WL 975052, at *5 (E.D. La. Apr. 8, 2008) ("Fifth Circuit precedent is clear that whether the plaintiff alleges excessive force *during* or *simultaneous with* an arrest versus *after* an arrest results in distinct consequences under *Heck*.").

The Fifth Circuit recently distinguished *Bush* in the context of a plaintiff who had been convicted of assault of a public servant under Texas law. The defendant in *Whatley v. Coffin*, 2012 WL 5419531 (5th Cit. Nov. 7, 2012), had initially been charged with aggravated assault of both defendants as public servants by threatening them with a truck, and he pled guilty to the lesser-included offenses of assault on a public servant. The Fifth Circuit held that Whatley's claims were *Heck*-barred because he had presented the incident as a single violent encounter in which he was "wholly innocent" and denied acting in a violent manner or that the "situation was potentially explosive", and he did not allege that the excessive force occurred after his threatening behavior or was far greater than required for his arrest or to address his threatening behavior. *Id*. at *2.

11

As in *Whatley*, Plaintiff describes the defendants' use of excessive force as a continuous incident during which he did not resist. Even if Plaintiff's claims that the defendants used excessive force after he stopped resisting and told Bentley that he was not resisting are considered separately, the analysis of whether success on his post-fall excessive force claim requires proof of a fact that is inherently inconsistent with his conviction also distinguishes this case from *Bush*. At Plaintiff's trial, Bentley testified that Plaintiff kicked the police car door, causing him and the officers to fall to the ground. Because his left elbow was at Plaintiff's back, it hit the ground and they all fell on it, pinning it down so that he could not move it and injuring it. Adams and a third officer then picked Plaintiff up and put him in the car. *Rodriguez*, 2011 WL 345934 at *1-2. Plaintiff testified that he put his foot up so that his head would not hit the car, that the defendants then threw him to the ground, that Bentley did not fall under him, and that Plaintiff fell on his own arm and wrist. *Id.* at *2. He denied pushing or pulling Bentley to the ground or intentionally, knowingly, or recklessly causing him bodily injury. *Id.*

In convicting Plaintiff, the jury credited Bentley's testimony over his. Success on Plaintiff's claims that the officers stood up while he lay helpless on the ground after the fall, that they began kicking and punching him even though he told them he was not resisting, and that he did not land on Bentley's arm and did not have to be lifted off of it, would require proof of facts that are inherently inconsistent with the jury's finding that he intentionally, knowingly, or recklessly injured Bentley. His version of events could not co-exist with his conviction for assault on a public servant. Plaintiff's post-fall claims are therefore also barred by *Heck v. Humphrey*, and summary judgment should be entered for the defendants on this basis.

## V. CONCLUSION

*Defendants' Motion for Summary Judgment* ("MSJ"), filed August 3, 2012 (doc. 37), should be **GRANTED**. Plaintiff's claims should be dismissed with prejudice until he satisfies the conditions set forth in *Heck v. Humphrey*.

**SO RECOMMENDED on this 4th day February, 2013.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE